MATTER OF BARSAI

In Visa Petition Proceedings

CIN N 4855

*Decided by Regional Commissioner March 2, 1981*

(1) A business firm which is a branch of a foreign government qualifies as an "affiliate" within the meaning of section 101(a)(15)(L) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(15)(L), so long as the requisite business affiliation exists between the foreign firm and the petitioning United States firm.

(2) An employee of a foreign firm, even a firm which is a branch of a foreign government, can qualify as an "intra-company transferee" within the meaning of section 101(a)(15)(L) of the Act.

ON BEHALF OF PETITIONER: Judith G. Landt
2800 Prudential Plaza
Chicago, Illinois 60601

This matter is before me on appeal from the District Director's decision of August 5, 1980, denying the petition to classify the beneficiary as an intra-company transferee under section 101(a)(15)(L) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(15)(L), as amended. The appeal will be sustained.

The petitioner, a Delaware corporation with its principal place of business in Columbus, Ohio, is engaged in the sale and service of Hungarian-made X-ray equipment and medical products. It has three full-time employees and a gross annual income of $500,000. The petitioner is a wholly-owned subsidiary of a Hungarian firm which serves as supplier to the petitioner. The beneficiary is a 51-year-old native and citizen of Hungary who has been employed by the petitioner's Hungarian parent firm for the last 30 years. During the past 6 years he has served as chief executive of the firm's development department for X-ray equipment. The petitioner seeks to employ the beneficiary as its corporate president at a salary of at least $35,000 per year.

An intra-company transferee is defined by section 101(a)(15)(L) of the Act as:

an alien who, immediately preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United

States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or involves specialized knowledge...

It is undisputed that the beneficiary has the requisite 1 year continuous employment abroad and is coming to the United States to render his executive and managerial services to the petitioner. However, the District Director determined that the petitioner's Hungarian parent firm is owned and operated by the Hungarian Government thus making the beneficiary an employee of the Hungarian Government. The District Director concluded that the "L-1" classification was not designed to include employees for foreign governments· and, therefore, he denied the petition.

The District Director's analysis fails to recognize the form of commercial activity conducted within a communist, economic, and political system. Generally, ownership of the means of production in a communist system is held by the country's central government. Nevertheless, the record shows that the direction and management of such enterprises are primarily conducted independently from the government; they constitute separate legal persons which are free to operate in a basically profit-maximizing manner. Even if it could be said that the petitioner's Hungarian parent is nothing more than a branch of the Hungarian Government, this would not belie the fact that it remains the legal and whole owner of the petitioning corporation, thereby creating the requisite business affiliation between the two. In any event, the fact that business organizations in communist-bloc countries exist in a somewhat different formal and theoretical structure is no reason for refusing to bring these bona fide commercial firms within the provisions of section 101(a)(15)(L) of the Act. Indeed, the situation here presents the very type of personnel interchange, cross-fertilization of ideas,.and fostering of international trade which, in part, the statute was intended to promote.

Based upon the foregoing, I find that the petitioner and the beneficiary's Hungarian employer possess the requisite affiliation and that the beneficiary qualifies as an eligible transferring executive/managerial employee within the meaning of the statute. Accordingly, the District Director's decision will be reversed and petition approved.

**ORDER:**  The appeal is sustained and the petition approved.

14